**In re Anonymous No. 50 D.B. 88**

Disciplinary Board Docket no. 50 D.B. 88.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

TUMOLO, *Chairman,* November 29, 1990—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations regarding the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on May 1, 1984. On his last attorney registration statement, filed on September 15, 1986, respondent listed his business address as [ ]. Respondent currently resides at [ ].

On May 19, 1988, Office of Disciplinary Counsel filed a four-charge petition for discipline in which respondent was charged with the following: failing to maintain complete records of client funds, failing to render an appropriate account to his client, failing to promptly pay to his client funds to which his client was entitled, commingling of funds, failing to disclose that which he is required to reveal, making a false statement, engaging in conduct involving dishonesty, fraud and misrepresentation, disregarding the rulings of a tribunal, habitually violating rules of procedure, engaging in conduct prejudicial to the administration of justice, and engaging in conduct which adversely reflects on his fitness to practice law.

On August 25, 1989, Office of Disciplinary Counsel filed a memorandum delineating its unsuccessful

attempts of serving respondent with the petition for discipline. Eventually, respondent was located at his parent's home in Florida. On October 12, 1989, respondent answered the petition for discipline by filing a handwritten letter.

On February 22, 1990, respondent filed his resignation from the practice of law in the Commonwealth of Pennsylvania in accordance with Rule 215, Pa.R.D.E. Under cover letter dated March 30, 1990, the Supreme Court of Pennsylvania returned respondent's resignation, citing as its reason the fact respondent failed to *unconditionally* admit all of the material facts in the petition for discipline.

In the interim, on September 5, 1989, the matter was referred to Hearing Committee [ ] consisting of: [ ], Esq., chairperson; [ ], Esq.; and [ ], Esq. A hearing was held on March 6, 1990. Although respondent received proper notice of the hearing, he chose not to attend due to "distance and expense." (Resp. reply brief p. 1.) At the close of the hearing, Office of Disciplinary Counsel submitted its brief on April 3, 1990. Respondent mailed to [ ], the chairperson of Hearing Committee [ ], a handwritten letter dated April 23, 1990, purporting to answer the brief filed by Office of Disciplinary Counsel. The hearing committee filed its report on July 20, 1990 in which the committee recommended disbarment. Neither petitioner nor respondent filed briefs on exceptions to the report and recommendation of the hearing committee.

The matter was adjudicated by the Disciplinary Board at its scheduled meeting on September 27, 1990.

## FINDINGS OF FACT

The board adopts the following findings of fact as determined by the hearing committee:

*General*

(1) Respondent was admitted to practice law in the Commonwealth of Pennsylvania on May 1, 1984. (Exh. P-1.)

(2) In February 1984, respondent joined the law firm [A] of which respondent's brother, [B], was the named partner.

(3) From February 1984 to December 1984, respondent deposited the proceeds of all settlements he negotiated on behalf of the law firm's clients into account no. [   ] at the [C] titled "[A]" ([C] escrow account). (Exhs. P-35, P-36; N.T. 17-18.)

(4) Respondent's brother, [B], was convicted of certain criminal charges. By order dated December 18, 1984, in reference to the criminal action captioned *United States of America v. [B] and [D]*, Criminal Action no. [   ], the Honorable [E] ordered the forfeiture of the law firm's assets. (Respondent's answer para. 3.)

(5) After his brother's conviction, respondent practiced law under the name of [Respondent], P.C. (Exh. P-1.) On December 7, 1984, respondent opened account no. [   ] at the [F] Bank titled "[Respondent], Esq. Escrow Account" ([F] escrow account) and deposited settlements he obtained on behalf of the law firm's clients into the [F] escrow account. (Exhs. P-4, P-34.)

(6) At some point after June 1985, respondent left the Commonwealth of Pennsylvania. Since 1986, respondent has not paid his Pennsylvania attorney registration fee. Respondent currently resides at [   ]. (Respondent's answer p. 7.)

*The [G] Matter*

(7) On March 14, 1984, [G] retained [H], Esq., and the law firm to represent her in claims arising out of an automobile accident on April 9, 1983. (Exh. P-20;

N.T. 14-16.) In June 1984, [G] retained respondent to represent her brother in a separate criminal matter. (Exh. P-12; N.T. 61-62.)

(8) The driver's insurer, [I] Insurance Company, offered and [G] agreed to settle her third-party claims for $75,500. (Exh. P-22; N.T. 15-16.)

(9) On July 16, 1984, [I] issued draft no. [   ] in the amount of $75,500 made payable to [G] and the law firm. (Exh. P-32.) This draft was sent to the law firm and deposited into the [C] escrow account. (Exh. P-35; N.T. 17-18.)

(10) During a meeting with [G] on July 30, 1984, [H] gave [G] a written account of her settlement which provided the following:

(a) $2,000 was retained as "legal fee for her brother's criminal case";

(b) $10,000 was to be held in escrow for unpaid medical bills in the event they were not satisfied in connection with [G's] PIP claims;

(c) $30,200 was retained by respondent for legal fees;

(d) $1,020 was retained by the firm to cover costs due; and

(e) $32,780 was designated as the balance due [G].

(11) The decision to retain $10,000 was made by respondent's brother, [B]. (N.T. 21.)

(12) Pursuant to the July 30, 1984 accounting, [G] received $32,280. Shortly thereafter, [H] terminated his association with the law firm but continued to represent [G] in connection with the settlement of her PIP claim. (N.T. 7, 25.)

(13) Sometime in early November 1984, [G's] insurer agreed to satisfy all of [G's] medical claims arising out of the April 1983 accident. (N.T. 25-26.)

(14) Upon being notified by [H] that her medical bills had been paid, [G] immediately telephoned respondent to request the return of the $10,000. (N.T. 66.)

(15) Respondent was not available to speak with [G] and did not return her call. (N.T. 67.)

(16) By letter dated November 26, 1984, [G] informed respondent that her medical bills had been paid and demanded the return of her $10,000. (Exh. P-24.)

(17) By letter dated November 27, 1984, [H] demanded that respondent return [G's] $10,000. (Exh. P-26.)

(18) Shortly thereafter, [G] went to respondent's office, waited until he was available, and demanded the return of the $10,000. (N.T. 69-70.)

(19) Respondent agreed to return $5,000 to [G] if she would agree to release respondent from all further liability on both the personal injury and the criminal matter. Respondent stated further that he intended to retain $5,000 as compensation for his services on behalf of [G's] brother. (N.T. 70.)

(20) [G] refused respondent's offer because respondent had previously agreed to return the full $10,000 in the event that her medical bills were paid by her insurer. (N.T. 70.)

(21) By letter dated December 29, 1984, [G] again demanded that respondent return her $10,000 or provide an accounting of its disposition. (Exh. P-25.)

(22) Respondent failed to distribute the funds to [G], failed to provide an accounting, and failed to respond to her letters. (N.T. 71-72.)

## C. The [J] Matter

(23) On December 29, 1983, [J] was injured in an automobile accident when the vehicle she was driving collided with an automobile driven by [K]. (N.T. 32, 51.)

(24) Both parties in the accident were insured by [L] Insurance Company. (N.T. 32, 51.)

(25) [J] was represented by [H] and the law firm until [H] left the firm in July 1984.

(26) In December 1984, respondent agreed with [L] to settle [J's] claim for $12,500. (Exh. P-18.)

(27) On or about December 10, 1984, [L] forwarded to respondent draft no. [   ] in the amount of $12,500 made payable to [J] and her attorney, [respondent]. (Exhs. P-18, P-33.)

(28) This draft was endorsed with the names of both [respondent] and [J]. The signature on the draft does not appear to be that of [J]. In fact, [J] specifically denies that she endorsed the draft or that it was done so with her authorization. Respondent contends that the endorsement was placed on the back of the settlement check pursuant to written authorization from [J]. (Exh. P-18 para. 14.) Respondent did not offer into evidence the supposed written authorization. (N.T. 44, 59; exh. P-33.)

(29) Respondent deposited the [J] settlement draft into the [F] escrow account on December 10, 1984. (Exh. P-17 para. 15; exh. P-18 para. 15.)

(30) By letter dated December 20, 1984, [J] discharged respondent and requested that he release her file to her new counsel, [H]. (Exh. P-27.) Respondent failed to return [J's] file as requested. (Exh. P-27 para. 17; exh. P-18 para 17.)

(31) By letter addressed to [J], dated January 24, 1985, respondent stated that he was writing to confirm a previous telephone conversation regarding the settlement of her case and requested that [J] contact him to sign closing papers. This letter makes no reference to the December 20, 1984 letter from [J]. (Exh. P-28.)

(32) By letter received in respondent's office on January 30, 1985, and in her testimony at the hear-

ing, [J] denied that she authorized any settlement on her behalf. (Exh. P-29; N.T. 54.) Respondent failed to respond to [J's] letter.

(33) On May 3, 1985, after receiving notice from the Office of Disciplinary Counsel of the alleged violations of the Disciplinary Rules in regard to the [J] matter, respondent stated that the "$12,500 received in settlement on behalf of [J] was in his escrow account." (Exh. P-18 para. 27.)

(34) After respondent deposited [J's] $12,500 settlement draft in the [F] escrow account, the balance in the account fell below $12,500. (Exh. P-16a.)

(35) By letter dated May 31, 1985, respondent forwarded to [M], trustee of the law firm of [B], P.C., a check in the amount of $12,500 which he represented were [J's] settlement funds.

## D. The [N], [O], and [P] Matter

(36) On July 19, 1982, a gas explosion in the home of [N] and [O] damaged their home and personal belongings along with the personal belongings of [P] and [Q], guests. (Exhs. P-13, P-14.)

(37) [N], [O], [P] and [Q] retained the law firm to pursue their claims against [ ] Gas Works for property damage. (Exhs. P-13, P-14.)

(38) At the time of the explosion, [N] and [O] were insured by [R] Insurance Company under a homeowner's policy. (Exhs. P-13, P-14.)

(39) On July 21, 1982, [O] notified [R] of the accident and the damage claims.

(40) [N], [O] and [P] executed proof of loss statements at respondent's office which respondent submitted to [R].

(41) [R] forwarded to respondent two drafts dated January 4, 1985. One draft was in the amount of $13,983.64 for damage to the dwelling and the other

was in the amount of $10,000 for loss of contents. (Exhs. P-13, P-14.)

(42) On January 7, 1985, respondent caused the insurance proceed drafts to be endorsed in his own name and in the names of [N], [O] and [P]. Thereafter, respondent deposited the funds into his [F] escrow account.

(43) On January 7, 1985, respondent notified [N], [O] and [P] of his receipt of their funds. At this time a fee dispute arose.

(44) [N], [O] and [P] claim that respondent is not entitled to any fee from the insurance proceeds because they had retained the law firm solely to represent them in their claims against [ ] Gas Works and not to represent them on their insurance claims.

(45) After receiving notice from the Office of Disciplinary Counsel of the allegations against him, respondent forwarded $23,983.64 to [S], Esq., the attorney for [N], [O] and [P]. (Exh. P-15a.)

(46) On January 7, 1985, respondent deposited the [R] drafts totaling $23,983.64 in the [F] escrow account. Prior to this deposit, on December 10, 1984, respondent deposited [J's] settlement funds of $12,500 in the [F] escrow account. Respondent was required to maintain in escrow the total amount of $36,483.64. From January 7, 1985 to May 31, 1985, the balance in respondent's escrow account fell below $36,483.64. (Exhs. P-14, P-16a, P-17 and P-18.)

## E. Misrepresentations to the Court

(47) In April 1985, [M], Esq., moved for relief in the case of *United States of America v. [B] and [D]*, Criminal Action no. [ ] ([ ] Pa.), and for an order to show cause why respondent should not be held in

contempt for his interference in [M's] collection of the law firm's assets in violation of Judge [E's] order. (Petition for discipline para. 40; answer para. 40.)

(48) On May 3, 1985, a hearing in regard to the above matter was held, during which respondent represented himself. (Petition for discipline para. 42; answer para. 42.)

(49) During this hearing, [J], [G] and [N] testified to their inability to recover their funds and/or files from respondent. Respondent denied that he drew any funds out of the [C] escrow account, and denied that he made any of the disbursements authorized to [G]. (Exh. P-4; N.T. 59-60.)

(50) During the relevant period, approximately 400 checks were drawn on the [C] escrow account, 386 of which were signed by respondent, including checks drawn to [G] in the total amount of $32,280. (Exhs. P-23, P-36; N.T. 87.)

(51) During the court's investigation into the whereabouts of the $23,983.64 belonging to [N], [O] and [P] and the $12,500 belonging to [J], respondent stated the following:

"Your Honor, if I could make a brief statement, the $23,983.64 that [N] brought up and the $12,500 that [J] brought up are both in my escrow account. They've been there and they have not been disturbed since they were received, so I am in receipt of both of those funds." (Exh. P-4 p. 50.)

(52) At the time respondent made the above statement to the court, he knew that his statement was a misrepresentation of the facts.

## F. Disregard of Rules of Court

(53) Respondent appeared on behalf of defendants [respondent], [B], [T], [U], [V] and [W] in the matter

*United States of America v. [B] et al.,* Civil Action No. [ ] ([ ] Pa.). (Petition for discipline para. 49; answer para. 49.)

(54) Upon motion for sanctions and after a hearing, Judge [X] found that respondent had "a history of dilatoriness in the exercise of his professional responsibility for his client's interest and in the exercise of his responsibility to obey the orders of this court, as an officer of the court." The court imposed sanctions. (Exh. P-9 pp. 4-5.)

## CONCLUSIONS OF LAW

Respondent's conduct constitutes a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(A) D.R. 1-102(A)(4)—which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(B) D.R. 1-102(A)(5)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice;

(C) D.R. 1-102(A)(6)—which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law;

(D) D.R. 7-102(A)(3)—which prohibits an attorney in his representation of a client from concealing or knowingly failing to disclose a fact which he is required by law to reveal;

(E) D.R. 7-102(A)(5)—which prohibits an attorney in his representation of a client from knowingly making a false statement of law or fact;

(F) D.R. 9-102(A)(2)—which requires that funds belonging in part to a client and in part to the lawyer be deposited in an identifiable bank account maintained in the state in which the law office is situated;

(G) D.R. 9-102(B)(3)—which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them; and

(H) D.R. 9-102(B)(4)—which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer's possession which the client is entitled to receive.

Respondent's conduct did not constitute a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(A) D.R. 7-106(A)—which prohibits an attorney from disregarding standing rules of a tribunal and rulings of a tribunal made in the course of a proceeding; and

(B) D.R. 7-106(C)(7)—which prohibits an attorney from intentionally or habitually violating any established rule of procedure.

## DISCUSSION

In reviewing this disciplinary matter de novo, the board's purpose is to determine whether respondent's conduct makes him unfit to practice law from the standpoint of protecting the public and the court. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 579, 506 A.2d 872, 875 (1986). The hearing committee recommended disbarment to which neither the Office of Disciplinary Counsel nor respondent filed exceptions.

Respondent was admitted to the practice of law in the Commonwealth of Pennsylvania in May 1984. Six months after he was admitted, respondent began to engage in the misconduct which resulted in this disciplinary proceeding. In just a short period of

time, from December 1984 through May 1985, respondent engaged in a broad spectrum of misconduct.

In the [G] matter, respondent failed to return to his client funds in the amount of $10,000 which rightly belonged to his client. Instead of returning the funds, respondent attempted to bargain with his client. Respondent offered to return $5,000 if [G] would release him from all liability in both [G's] personal injury matter and a criminal matter respondent was handling on behalf of [G's] brother. Respondent intended to retain the other $5,000 as compensation for his work in the criminal matter. After [G] rejected respondent's offer, respondent refused to return to [G] the $10,000.

In the [J] matter, respondent settled his client's legal matter for $12,500 without his client's authorization. Respondent also failed to forward to his client her file or render an accounting after being discharged by his client.

In the [N], [O] and [P] matter, respondent failed to promptly return to his clients the proceeds from their homeowner's insurance policy in the amount of $23,983.46. A fee dispute arose when respondent attempted to extract a fee from his client's insurance funds. Respondent was not entitled to this fee.

In addition, respondent failed to maintain a sufficient balance in his escrow account to cover the deposited funds of his clients. When questioned about the status of his clients' escrowed funds, respondent repeatedly failed to tell the truth. In the course of Office of Disciplinary Counsel's investigation, respondent misrepresented to petitioner that the funds remained intact in his escrow account. When testifying before Judge [X] of the United States District Court for the [ ] District of Pennsylvania, respondent misrepresented to the court

that the funds were in his escrow account and had not been disturbed since the time of receipt. Respondent further misrepresented that he had no control over or knowledge of the distribution of funds in another escrow account. To the contrary, respondent signed and distributed over 400 checks from this account.

Respondent was also charged with habitually violating established rules of civil procedure. The hearing committee dismissed this charge reasoning that the bare recital of Judge [X's] order, stating respondent had "a history of dilatoriness . . . in the exercise of his responsibility to obey the orders of this court" did not constitute clear and convincing evidence sufficient to establish the habitual nature of respondent's conduct. The board concurs in the hearing committee's dismissal of this charge.

If one had to describe respondent's conduct in one word it would have to be "dishonest." In a short period of time, respondent has displayed a deplorable and totally intolerable disregard for the truth; the cornerstone of the legal system. Respondent has settled his client's case without authorization, lied to Disciplinary Counsel and to the court and unlawfully withheld his clients' funds. In the third matter, respondent never returned the $10,000 owed to [G]. [G] received reimbursement from the Client Security Fund. (N.T. 72.) Respondent has evaded responsibility for his conduct. In addition, as reflected in his reply brief, respondent has not acknowledged the seriousness of his conduct. Dishonesty on the part of an attorney establishes unfitness to continue practicing law. *Office of Disciplinary Counsel v. Tumini,* 499 Pa. 284, 453 A.2d 310 (1982). The board concludes that respondent is unworthy of the public trust which he has so blatantly breached.

## RECOMMENDATION

The Disciplinary Board unanimously recommends that respondent be disbarred from the practice of law in the Commonwealth of Pennsylvania. The board further recommends that respondent be ordered to pay the costs incurred in the investigating and prosecuting of this matter.

Ms. Heh did not participate in the adjudication.

## ORDER

And now, April 1, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated November 29, 1990, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.